UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHARLES GRIFFITH,

    Petitioner,

v.                                          Case No.  8:10-cv-1715-T-33AEP

SECRETARY, DEPARTMENT OF CORRECTIONS,

    Respondent.
_____

**O R D E R**

This cause is before the Court on Petitioner Charles Griffith's timely-filed 28 U.S.C. § 2254 petition for writ of habeas corpus.  Griffith challenges his convictions and sentences entered by the Circuit Court for the Tenth Judicial Circuit, Polk County, Florida.  A review of the record demonstrates that, for the following reasons, the petition must be **denied**.

**BACKGROUND**

On April 29, 2003, Griffith was charged in the State's Third Amended Information with the following: burglary of a dwelling while armed with a firearm (count one); burglary of a dwelling (count two); grand theft ($100 or more, taken from a dwelling) (count three); felony fleeing or attempting to elude (high speed) (count four); aggravated assault on a law enforcement officer (deadly weapon) (count five); resisting officers without violence (multiple officers) (count six); and possession of a firearm by a convicted felon (count seven). Prior to trial, Griffith was noticed as a habitual felony offender, and as a prison release reoffender.

After trial, which commenced November 3, 2003, Griffith was found guilty of counts one, two, three, four, and six.  He was found not guilty of count five.  At sentencing on December 5, 2003, Griffith was sentenced to life in prison as a prison release reoffender on count one; fifteen years incarceration on count two; five years incarceration on count three; fifteen years incarceration on count four; and one year incarceration in the Polk County Jail on count six.  All sentences were consecutive to each other. At sentencing, an oral *nolle prosequi* was entered on count seven.

The state trial court conducted an evidentiary hearing on Griffith's postconviction claims. The state trial court's findings are "presumed to be correct" (28 U.S. C. 2254(e)(1)) and there is no showing that its decision "was based on an unreasonable determination of the facts. . . ."(28 U.S.C. § 2254(d)(2)).  There are no claims in the habeas petition that permit further factual development. No federal evidentiary hearing is warranted on Griffith's petition.

Given that Griffith has not challenged Respondent's statement of the procedural history of this case, a recitation of the procedural history of Griffith's criminal conviction is unnecessary. The issues are fully briefed and the case is ripe for decision. The record is fully developed and the claims of the petition raise issues of law, not issues of fact.  *See Breedlove v. Moore*, 279 F.23 952, 959 (11th Cir. 2002).

## STANDARDS OF REVIEW

### AEDPA STANDARD

This petition, initially filed in 2010, is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *Woodford v. Garceau*, 538 U.S. 202 (2003); *Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). AEDPA affects this Court's review

of both factual findings and legal rulings entered by the state courts in the rejection of Griffith's federal claims. Pursuant to 28 U.S.C. §2254(e)(1), this Court's review of state court factual findings must be highly deferential; such findings are presumed correct, unless rebutted by a petitioner with clear and convincing evidence. *Wood v. Allen*, 542 F.3d 1281, 1285 (11th Cir. 2008), *affirmed*, ___ U.S. ___, 2010 WL 173369 (Jan. 20, 2010); *Crawford v. Head*, 311 F.3d 1288, 1295 (11th Cir. 2002); *Robinson v. Moore*, 300 F.3d 1320, 1342 (11th Cir. 2002). Moreover, relief which was denied in state court due to asserted factual error can only be granted on habeas where the state court resolution turned on a determination of facts which was not just incorrect but unreasonable. *Wood*, 542 F.3d at 1285; 28 U.S.C. §2254(d)(2).

Similarly, the legal rulings of claims adjudicated in state courts only provide a basis for federal relief where the state court adjudication was either "contrary to" clearly established federal law as determined by the United States Supreme Court, or involved an "unreasonable application" of such law. *See* 28 U.S.C. §2254(d)(1); *Haliburton v. Secretary, Dept. of Corrections*, 342 F.3d 1233, 1238 (11th Cir. 2003). In *Williams v. Taylor*, 529 U.S. 362 (2000), the United States Supreme Court discussed these standards at length. The Court explained that a state court decision is "contrary to" clearly established federal law if either (1) the state court applied a rule that contradicts the governing law set forth by Supreme Court case law, or (2) when faced with materially indistinguishable facts, the state court arrived at a result different from that reached in a Supreme Court case. The question is whether the state court correctly *identified* the proper rule of law to be applied. *Robinson*, 300 F.3d at 1344-45; *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). A state court decision is not "contrary to" established federal law even if a federal court

might have reached a different result relying on the same law. *Williams*, 529 U.S. at 405-06; *Robinson*, 300 F.3d at 1344-45.

A state court ruling is an "unreasonable application" of clearly established federal law if it identifies the correct legal rule from Supreme Court case law, but unreasonably *applies* that rule to the facts of the petitioner's case. An unreasonable application may also occur if a state court unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context. A federal court does not independently review the correctness of the state court adjudication; the "unreasonable application" analysis requires a showing that the state court ruling is not simply incorrect or erroneous, but *objectively unreasonable. Williams*, 529 U.S. at 409-410; *Robinson*, 300 F.3d at 1345; *Putman*, 268 F.3d at 1241. The measuring stick for both the "contrary to" and "unreasonable application" assessments of the state court merits adjudication is "clearly established federal law," which refers only to the holdings, and not dicta, of the United States Supreme Court at the time of the relevant state law decisions. *Williams*, 529 U.S. at 412; *Putman*, 268 F.3d at 1241.

In *Brecht v. Abrahamson*, 507 U.S. 619 (1993), the Supreme Court set forth the standard for relief where constitutional error is determined to exist on habeas review. This test is "less onerous" then the harmless error standard enunciated in *Chapman v. California*, 386 U.S. 18 (1967). "The test is whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.' Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.' " *Brecht*, 507 U.S. at 637. Although no constitutional error has occurred in this case, any

4

possible error would clearly be harmless beyond any reasonable doubt based on the facts and the record herein.

AEDPA requires greater deference to state court decisions than the traditional *de novo* standard of review; Griffith has the burden to overcome the presumption of correctness attached to state court factual findings or to establish that the state court legal rulings were contrary to, or unreasonable applications of, established federal law. *Crawford*, 311 F.3d at 1295.

In *Childers v. Floyd*, --- F.3d ---, 2011 WL 2162083, at * 10-11 (11th Cir., June 2, 2011), the Eleventh Circuit stated that "unless the state court clearly states that its decision was based solely on a state procedural rule, we will presume that the state court has rendered an adjudication on the merits when the petition's claim 'is the same claim rejected' by the state court."  The pertinent portion of the opinion reads:

> The concept of an "adjudication on the merits" is the corollary of the long-held requirement that a state prisoner first exhaust his claims in state court. See id. § 2254(b)(1)(A) (requiring exhaustion of state court remedies); *Cone v. Bell*, —— U.S. ——, 129 S.Ct. 1769, 1780, 173 L.Ed.2d 701 (2009) (calling exhaustion of state remedies prior to seeking federal habeas relief a "longstanding requirement"). Federal-state comity underlies this policy; before asking the federal court to "correct" a state court's mistake, the petitioner must first give the state court an opportunity to rule on the merits of his claim. *Cone*, 129 S.Ct. at 1780 ("When a petitioner fails to properly raise his federal claims in state court, he deprives the State of 'an opportunity to address those claims in the first instance' and frustrates the State's ability to honor his constitutional rights." (quoting *Coleman v. Thompson*, 501 U.S. 722, 732, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991))).
>
> Implicit in this scheme lies the possibility that the state court—presented with the petitioner's federal constitutional claim—may not rule on the merits of the petitioner's claim. *E.g., Cone*, 129 S.Ct. at 1784. In those instances, AEDPA deference—that we may not grant habeas relief unless the state court's decision was "contrary to" or an "unreasonable application of" federal law—does not apply and federal courts evaluate the petitioner's claims de novo. Id. (citing *Rompilla v. Beard*, 545 U.S. 374, 380,

390, 125 S.Ct. 2456, 2462, 2467, 162 L.Ed.2d 360 (2005); *Wiggins v. Smith*, 539 U.S. 510, 534, 123 S.Ct. 2527, 2542, 156 L.Ed.2d 471 (2003)).

Faced with this possibility, the breadth of what it means to render an "adjudication on the merits" is of paramount importance. Decisions from this circuit and the United States Supreme Court have interpreted "adjudication on the merits" broadly. We have previously noted that § 2254 refers only to "decisions" and not to "opinions." *See Wright v. Sec'y for Dep't of Corr.*, 278 F.3d 1245, 1255 (11th Cir.2002). As such, a summary adjudication—a state court decision denying a petitioner's claim without an accompanying statement of reasons—is an adjudication on the merits under AEDPA. *Harrington v. Richter*, ––– U.S. –––, 131 S.Ct. 770, 780, 784, 178 L.Ed.2d 624 (2011); *Wright*, 278 F.3d at 1255. And, where the state court does explain its reasoning, that decision receives AEDPA deference even if the state court fails to cite—or is not even aware of—relevant Supreme Court precedent. *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) (per curiam).

Deference to the autonomy and dignity of the state courts underlies this broad definition of "adjudication on the merits." Deciding cases on the merits either with no explanation or using the language of state law is a common practice. State courts with busy dockets may choose to summarily deny claims they deem weak and instead focus on claims requiring greater thought. *See Harrington,* 131 S.Ct. at 784 ("The issuance of summary dispositions in many collateral attack cases can enable a state judiciary to concentrate its resources on the cases where opinions are most needed."). Similar constraints may lead courts to decide the merits of claims using state law, with which the state courts are likely more familiar. *Cf. Early*, 537 U.S. at 7, 123 S.Ct. at 364 (ruling that the state court decided the petitioner's claim on the merits even though it referenced only a California rule of criminal procedure). Requiring detailed opinions would intrude on these state prerogatives. See Wright, 278 F.3d at 1255 ("Telling state courts when and how to write opinions to accompany their decisions is no way to promote comity."). Furthermore, to do so would be anomalous under the guise of a statute meant to give greater deference to state court decisions. *See Renico v. Lett*, ––– U.S. –––, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010) ("AEDPA thus imposes a highly deferential standard for evaluating state-court rulings ... and demands that state-court decisions be given the benefit of the doubt." (citations and internal quotation marks omitted)); *Wright,* 278 F.3d at 1255 ("Requiring state courts to put forward rationales for their decisions so that federal courts can examine their thinking smacks of a 'grading papers' approach that is outmoded in the post-AEDPA era.").

With these anchors in place, an "adjudication on the merits" is best defined as any state court decision that does not rest solely on a state

procedural bar. *See Jason Williams v. Allen*, 598 F.3d 778, 796 (11th Cir. 2010) (" 'A decision that does not rest on procedural grounds alone is an adjudication on the merits regardless of the form in which it is expressed.' ") (quoting *Blankenship v. Hall*, 542 F.3d 1253, 1271 n. 4 (11th Cir. 2008)); *Wright,* 278 F.3d at 1255–56 (same). In *Harrington*, the Supreme Court essentially defined the term as such. The Court wrote: "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary. " 131 S.Ct. at 784–85 (emphasis added) (citations omitted).FN16 Therefore, unless the state court clearly states that its decision was based solely on a state procedural rule, we will presume that the state court has rendered an adjudication on the merits when the petitioner's claim "is the same claim rejected" by the state court. *Early*, 537 U.S. at 8, 123 S.Ct. at 364. The District Court of Appeal clearly did not apply a procedural bar, and we may therefore presume that the court rendered an "adjudication on the merits."

*Childers v. Floyd, supra*.

Because of the deference due the state court's findings of fact and conclusions of law, the state courts' determination of Griffith's claims largely governs review of those same claims. Consequently, in considering the reasonableness of the state courts' determinations, the review of Griffith's claims includes a recitation of the pertinent state court analysis.

## INEFFECTIVE ASSISTANCE OF COUNSEL STANDARD

To prevail on a claim of ineffective assistance of trial or appellate counsel, a Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland*'s two-part test requires a Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component.

## DISCUSSION

Griffith raised five grounds for habeas relief in his 28 U.S.C. § 2254 petition. In his reply, Griffith waived/abandoned grounds one and two. (See Doc. 10, p. 2).

## GROUND THREE

WHETHER THE FLORIDA STATE COURTS ABUSED THEIR DISCRETION WHERE THE STATE COURT'S DECISION RESTS UPON A CLEARLY ERRONEOUS FINDING OF FACT, AN ERRANT CONCLUSION OF LAW, AND AN IMPROPER APPLICATION OF FACT?

Griffith contends that:

Florida State Courts failed to consider Key Factual Allegations relative to his Sixth Amendment Ineffective Assistance of Counsel Claim, where Mr. Bedford failed to move to Suppress Statements, made by Griffith to Officer Laurie Matthews, on the premise that the *Miranda* warnings given to him were inadequate and ambiguous, in that they failed to inform Griffith of his Right to have counsel present *during* his interrogation."

(Doc. 1 [pages not numbered]).

Griffith raised this issue as an ineffective assistance of counsel claim in ground 2 in his Rule 3.850 motion for postconviction relief. Griffith's original argument regarding the adequacy of the *Miranda* warnings was derived from certain Florida district court cases that held the language in the *Miranda* warnings stating an individual has a right to counsel "prior to answering any question" inadequately informed the person of his or her right to counsel "during questioning." *See West v. State*, 876 So. 2d 614 (Fla. 4th DCA 2004); *Roberts v. State*, 874 So. 2d 1225 (Fla. 4th DCA 2004).

In its order denying the claim, the state trial court stated:

In response to Claim 2, the record establishes that Defendant's trial took place in November of 2003. In May of 2004 the Fourth District Court of Appeal began issuing opinions that expressed the view that when *Miranda* warnings advise a Defendant that he has the right to have an attorney present <u>before</u> any questions but does not also advise him that he has the

right to have an attorney present <u>during</u> questions, such warnings are constitutionally inadequate. *See Roberts v. State*, 874 So. 2d 1225 (Fla. 4th DCA 2004); *Franklin v. State*, 876 So. 2d 607 (Fla. 4th DCA 2004); and *President v. State*, 884 So. 2d 126 (Fla. 4th DCA 2004). Prior to *Roberts,* there were no Florida district court opinions expressly making such a ruling. Therefore, Defendant, in essence, suggests his attorney should have discovered and argued a view that would have been new and novel at the time. The Court finds defense counsel cannot be held to the standard expounded by Defendant. Namely, that defense counsel should have anticipated the rulings of the Fourth District Court of Appeal and was ineffective for not doing so. Such is not the standard set forth in the Sixth Amendment to the United States Constitution or in the opinions determining whether counsel was effective or ineffective. Accordingly, Claim 2 is DENIED.

(Exhibit B: 2)

Griffith filed a motion for reconsideration. The state trial court denied the motion, stating:

> As to claim 2, the Defendant asserts that he was not basing his assertion of ineffective assistant of counsel on trial counsel [sic] overlooking *Roberts v. State*, 874 So. 2d 1225 (Fla. 2th DCA 2004), but on trial counsel's overlooking the requirement's [sic] in *Miranda*. The Court finds, however, that even accepting the Defendant's assertions *arguendo*, the underlying basis for the claim is without legal merit. *See Canete v. State*, 921 So. 2d 687, 688 (Fla. 4th DCA 1006), *citing California v. Prysock*, 453 U.S. 355, 359, 101 S.Ct. 2805, 69 L. Ed.2d 696 (1981), ("[T]he Supreme Court recognized that 'the "rigidity" of *Miranda* [does not] extend[d] to the precise formulation of the warnings given a criminal defendant,' and 'that no talismanic incantation [is] required to satisfy its strictures.' A verbatim wording of *Miranda* is not required, and *Miranda* warnings need not be given in the exact form described in *Miranda. Roberts*, 874 So. 2d at 1227. Rather, the question is whether the warning adequately fulfills *Miranda's* substantive requirements."
>
> The Court finds the warnings given to Defendant were adequate to fulfill *Miranda's* substantive requirements and do not have the infirmities *Roberts* was concerned with. As is apparent from exhibits to the Defendant's *Motion for Post Conviction Relief*, the Defendant was advised of his *Miranda* warnings on several occasions by law enforcement. On one occasion the Defendant signed a *Miranda* waiver and moments later, during a taped statement by the Defendants, he was again advised of his rights pursuant to *Miranda.* If the Defendant did not understand before, certainly he must have understood his right to have an attorney present during interrogation when he was again advised of his *Miranda* rights while the tape recorder was

> running and he was in the process of being questioned by law enforcement interrogators. (See attachments to Defendant's *Motion for Post Conviction Relief.* [sic] As a result, there would have been no legal basis upon which to file a motion to suppress. Accordingly, since it is axiomatic that counsel cannot be ineffective for failing to file baseless motions, claim 2 . . . [is] denied on this additional basis.

(Exhibit 2: 4).

The state district court of appeal per curiam affirmed the state trial court's denial of Rule 3.850 relief. *Griffith v. State*, 37 So. 2d 859 (Fla. 2d DCA 2010). Griffith has not shown that the state courts' decisions were contrary to or an unreasonable application of United States Supreme court precedent or federal law.

Ground three does not warrant habeas relief.

## GROUND FOUR

UNREASONABLE DETERMINATION OF THE FACTS WHERE THE STATE COURT FOUND TRIAL COUNSEL'S TESTIMONY MORE CREDIBLE WITHOUT CONSIDERING ALL THE TESTIMONIAL FACT EVIDENCE OR THE TRANSCRIPT OF THE TRIAL COLLOQUY?

Griffith contends that counsel was ineffective for interfering with Griffith's right to testify. Griffith raised this claim in ground 7 of his motion for postconviction relief. In denying the claim, the state trial court stated;

> In claim 7, the Defendant asserts that trial counsel was ineffective in interfering with the Defendant's right to testify by providing false information to the Defendant on the consequences of the Defendant [sic] testifying at trial. At the evidentiary hearing, the Defendant testified that trial counsel had advised him that he should not testify because the State would be able to ask him details of his past felony convictions. The Defendant testified that, based on his trial counsel's advice, it was his understanding that the State's questions could include the nature of the felony convictions as well as details of the crimes for which he was convicted. He testified that, based on this erroneous advice, he agreed not to testify. The Defendant did testify that trial counsel advised him that the final decision, on whether to testify, was the Defendant's. The Defendant further testified that, had he known that the State could only ask him if he had been convicted of a felony and the number

>  of times he had been convicted or if he had been convicted of a misdemeanor involving dishonesty or false statement, he would have demanded to testify in order to tell his side of the story.
>
>  Trial counsel testified that, to the contrary, he had advised the Defendant of the correct state of the law concerning the State's ability to question the Defendant concerning past convictions and that he would never advise a Defendant as the Defendant has asserted. Trial counsel testified that, beyond concerns for the Defendant [sic] having been convicted of prior felonies, he had additional reasons for advising the Defendant to not testify. Trial counsel testified that the Defendant had made admissions to him concerning the charges such that allowing the Defendant to testify would have been of no value in furthering his trial strategy. Trial counsel testified he did not express any concern to the Defendant about losing any advantage in the order of closing argument as suggested by the Defendant in his Motion. Trial counsel testified that the loss of any rebuttal closing argument was seldom a consideration in his trial strategy and that concern over the order of closing argument was misplaced, in his opinion. The Court finds that trial counsel's testimony was more credible than the Defendant's concerning trial counsel's advice regarding the State's potential examination of the Defendant regarding prior felonies, trial counsel's advice with regard to the potential value of the Defendant's testimony, and any concern over the order of closing argument. The Court finds trial counsel properly advised the Defendant that the final decision on whether to testify was the Defendant's decision. The court also notes that the trial court made inquiry concerning the Defendant's decision. (See attachments) Based on the above, claim 7 is DENIED.

(Exhibit B:6).

Counsel testified at the evidentiary hearing that he fully discussed the pro and cons of Griffith's testifying at trial. Counsel testified that he explained to Griffith that the state would be able to inquire about the number of convictions Griffith had, but not the specific offense which resulted in the conviction. A criminal defendant has a fundamental constitutional right to testify on his own behalf at trial that cannot be waived by defense counsel. *United States v. Teague*, 953 F.2d 1525, 1532 (11th Cir. 1992). Defense counsel bears the responsibility for advising the defendant of his right to testify or not to testify; of the strategic implications of each choice; and that it is ultimately for the defendant himself

to decide whether to testify. *Id.* at 1533. In order to waive this right, a defendant must make a knowing, voluntary, and intelligent waiver. The defendant has "the ultimate authority" to determine whether to plead guilty, waive a jury trial, testify in his or her own behalf, or take an appeal. Concerning those decisions, an attorney must both consult with the defendant and obtain consent to the recommended course of action. *Florida v. Nixon*, 543 U.S. 175, 187 (2004). However, the right to testify does not fall within the category of fundamental rights which must be waived on the record by the defendant himself. *Morris v. State*, 931 So. 2d 821 (Fla. 2006).

The state district court of appeal per curiam affirmed the state trial court's denial of Rule 3.850 relief. *Griffith v. State*, 37 So. 2d 859 (Fla. 2d DCA 2010). Griffith does not overcome the presumption of correctness of the state court's findings that counsel fully informed him of the pros and cons of testifying, and that Griffith's waiver of his right to testify was knowing and voluntary. Griffith has not shown that the state courts' decisions were contrary to or an unreasonable application of United States Supreme court precedent or federal law.

Ground four does not warrant habeas relief.

### GROUND FIVE

WHETHER THE STATE COURT'S SUMMARY DENIAL OF GRIFFITH'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM WAS CONTRARY TO THE DEFICIENT AND PREJUDICE PROGENY OF *STRICKLAND*?

Griffith raised this ground five as claim 8 in his Rule 3.850 motion for postconviction relief. Griffith claims that his trial counsel "omitted seeking voir dire of moving for mistrial of jurors seen having conversations with a uniformed Sheriff deputy during lunch recess." (Doc. 1)

The state court summarily denied this claim because it was conclusively refuted by the record that counsel, in fact, did ask to question the jurors but his request was denied. The state trial court order reads, in part:

> In claim 8, the Defendant asserts that trial counsel was ineffective for failing to move the trial court to voir dire two jurors seen having lunch and engaging in conversation with a sheriff's deputy during a lunch break. In its Response to claim 8, the State argues that trial counsel did request to question the two jurors and that the trial court declined trial counsel's request. The State further argues that Defendant's claim is speculative and conclusory with regard to any prejudice resulting from trial counsel's alleged ineffectiveness. The Court agrees with the State's argument, incorporated herein. In so far as trial counsel did request to question the jurors, which request was declined by the trial judge, the claim is one that could and should have been raised on direct appeal and is, therefore, procedurally barred. Accordingly, Claims 8 is DENIED.

(Exhibit B: 2).

The state district court of appeal per curiam affirmed the state trial court's denial of Rule 3.850 relief. *Griffith v. State*, 37 So. 2d 859 (Fla. 2d DCA 2010). Griffith does not overcome the presumption of correctness of the state court's findings with clear and convincing evidence. Griffith has not shown that the state courts' decisions were contrary to or an unreasonable application of United States Supreme court precedent or federal law.

<u>Ineffective Assistance of Appellate Counsel</u>

Griffith essentially raises an ineffective assistance of appellate counsel claim because ground five was not raised on direct appeal. An individual has not exhausted available state remedies when there is a right under state law to raise, by any available procedure, the question presented. 28 U.S.C. § 2254(c). Griffith filed a petition alleging ineffective of appellate counsel in the state court but did not raise this issue. (Exhibit C). Therefore, Griffith failed to exhaust his state court remedies and is barred from raising this

issue in a federal habeas petition.

Even if Griffith exhausted his state court remedies, he is not entitled to relief. With regard to a claim of ineffectiveness of appellate counsel, the standard of proof and review are the same as in the context of ineffective assistance of trial counsel. *See, Duest v. Singletary*, 967 F.2d 472, 477 n.4 (11th Cir. 1992); *Smith v. Robbins*, 528 U.S. 259 (2000). Appellate counsel who files a merits brief need not and should not raise every nonfrivolous claim. *Jones v. Barnes*, 463 U.S. 745, 754 (1983)(effective appellate counsel "winnows out" weaker arguments even though weaker arguments may be meritorious). The exercise of judgment involved in framing an appeal makes it "difficult to demonstrate that [appellate] counsel was incompetent" under *Strickland* for omitting a particular argument. *Smith v. Robbins*, 528 U.S. at 285-86 (citing *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.").

To demonstrate prejudice, a petitioner claiming ineffectiveness of appellate counsel must establish it was reasonably probable that, but for counsel's error, he would have prevailed on appeal. *Smith v. Robbins*, 528 U.S. at 286. Petitioner must satisfy both prongs of the *Strickland* test in order to prevail on his claim of ineffective assistance of appellate counsel. 528 U.S. at 289. Griffith has not done so.

Ground five does not warrant habeas relief.

Accordingly, the Court orders:

That Griffith's petition is denied. The Clerk is directed to enter judgment against Griffith and to close this case.

**CERTIFICATE OF APPEALABILITY AND**

**LEAVE TO APPEAL IN FORMA PAUPERIS DENIED**

The Court declines to issue a certificate of appealability pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts because Petitioner has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(2).

Because Petitioner is not entitled to a certificate of appealability, Petitioner is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on June 13, 2011.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Counsel of Record
Charles Griffith